IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
| **Plaintiff** | : | |
| | : | No. 1:21-cv-00798 |
| v. | : | |
| | : | (Judge Kane) |
| **K. BRITTAIN, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

On May 3, 2021, pro se Plaintiff Brandon Timmons ("Timmons"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against several Defendants employed by State Correctional Institution-Frackville ("SCI-Frackville"). (Doc. No. 1.) The case is presently proceeding on Timmons's amended complaint. (Doc. No. 38.) Presently before the Court is Defendants' motion to dismiss the amended complaint. (Doc. No. 39.) For the following reasons, the motion will be granted in part and denied in part.

**I.   BACKGROUND**

Timmons initiated this case through the filing of a complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants tampered with his food in violation of his constitutional rights. (Doc. No. 1.) Defendants moved to dismiss the complaint on November 22, 2021. (Doc. No. 19.) In response, Timmons moved for leave to amend and supplement the complaint. (Doc. Nos. 32, 35.) The Court granted the motions on April 20, 2022 and directed the Clerk of Court to docket the proposed complaint as Timmons's amended complaint. (Doc. No. 37.) The amended complaint was docketed that day and remains the operative pleading in this case. (Doc. No. 38.)

According to the allegations in the amended complaint, Timmons filed a prison grievance on September 30, 2020, complaining of alleged abuse by Defendant Burgess ("Burgess"). (Id. at

3.) While the grievance was being investigated, Burgess brought a food tray to Timmons on December 4, 2020 that contained a fish sandwich and a packet of tartar sauce. (Id.) Timmons put the tartar sauce on the sandwich, ate it, and noticed that it had "an extremely awful taste." (Id.) Timmons looked at the tartar sauce packet and noticed that it had previously been opened and resealed and that it appeared to contain a "foreign substance." (Id.) When Burgess returned to collect the food tray, Timmons asked him about this and Burgess allegedly ignored the question. (Id.) Approximately 15-20 minutes later, Timmons fell ill with diarrhea, nausea, and a headache. (Id.) Burgess allegedly told Timmons later that day that he had tampered with the food because Timmons had filed a grievance against him. (Id.) Timmons filed another grievance on December 21, 2020, alleging that prison officials were interfering with his mail, and he allegedly received several more food items that month that had been opened. (Id. at 3-4.)

Defendants allegedly continued to tamper with Timmons's food in January 2021. (Id. at 4.) In that month, Defendant Applegate ("Applegate") allegedly gave him "a milk that had a juice packet poured in" and Defendant Warford ("Warford") allegedly gave him a bag of chips that was "saturated and contaminated with a foreign liquid." (Id.) Timmons allegedly asked Warford about the liquid and Warford told him that he should not have filed a lawsuit and threatened to arrange for another inmate to attack Timmons if Timmons ever filed a grievance against Warford. (Id.)

Other incidents of food tampering allegedly occurred in the ensuing months. (Id.) On March 2, 2021, an unknown officer allegedly gave Timmons two syrup packets that had been opened and resealed "with dirt floating in them." (Id.) The officer allegedly told Timmons that the food tampering was not going to stop and that it was because of Timmons filing lawsuits.

(Id.)[1]  On March 3, 2021, Defendant Najda ("Najda") allegedly gave Timmons a food tray that had two ketchup packets that had been opened, resealed, and contaminated.  (Id.)  Najda allegedly told Timmons that substances were being placed in Timmons's food to make him impotent because of the grievances Timmons had filed.  (Id.)  Najda also allegedly told Timmons that if he filed a grievance against Najda, the grievance would not be considered by prison officials and Najda "would have [Timmons] slashed at whatever jail he went to."  (Id.)  On March 7, 2021, Defendant Brennan ("Brennan") allegedly gave Timmons two more ketchup packets that had been opened and tampered with and allegedly told Timmons that if he filed a grievance about the incident Timmons "would be hung in his cell."  (Id. at 5.)

On March 14, 2021, Defendant Morris ("Morris") allegedly gave Timmons salad dressing that had been opened and contaminated and a piece of bread that was "soaked in some type of foreign liquid."  (Id.)  Morris allegedly said, "take that snitch" and told Timmons that the bread was soaked in toilet water.  (Id.)  Defendant Scarpati ("Scarpati") allegedly gave Timmons ketchup packets that had been opened on March 15, 2021 and told Timmons that he was "playing with" Timmons's food so that Timmons would not eat.  (Id.)  Defendant Walton ("Walton") allegedly gave Timmons a packet of taco sauce on March 23, 2021 that had been opened and resealed.  (Id.)

On April 1, 2021, Defendant Whitney ("Whitney") allegedly gave Timmons ketchup packets that had been opened and resealed and told Timmons that he had urinated in the packets. (Id.) Whitney allegedly made a "comment about lawsuits" during this exchange.  (Id.)  On April 9, 2021, Defendant Kimmel ("Kimmel") allegedly gave Timmons mustard and ketchup packets

---

[1] The amended complaint technically alleges that the officer said, "this is not going to stop sue." (Id.)  The Court liberally construes this as an allegation that the officer told Timmons the food tampering was because of the lawsuits Timmons had filed.

3

that had been opened and resealed and allegedly told Timmons that he had spit on Timmons's bread. (Id.)

On May 28, 2021, Timmons noticed a John Doe correctional officer pouring liquid into his food. (Id. at 6.) The officer allegedly told Timmons that if wanted to file lawsuits "he better not eat." (Id.) Timmons ate the food and noticed that it "smelled and tasted of chemical disinfectant." (Id.) On May 30, 2021, the same officer allegedly brought him cereal and bread and when Timmons ate the bread, he noticed that he had a slimy substance on his lips and tongue. (Id. at 7.) Timmons looked at the bread and noticed "a glob of hog spit" on it. (Id.) Timmons asked the officer about it, and the officer allegedly responded, "you know what's going on you like to sue and rat." (Id.) Defendant Brittain was given notice of the alleged food tampering by the other Defendants through the filing of grievances in February 2021 and December 2021, but allegedly did nothing to stop it. (Id.)

Timmons raises claims in the amended complaint for intentional infliction of emotional distress, supervisory liability, food contamination and tampering in violation of the Eighth Amendment, retaliation in violation of the First Amendment, "campaign harassment," food deprivation in violation of the Eighth Amendment, civil conspiracy, deliberate indifference in violation of the Eighth Amendment, and failure to protect in violation of the Eighth Amendment. (Id. at 8-10.) He seeks damages and injunctive relief requiring Defendants to stop retaliating against him. (Id. at 11.)

Defendants moved to dismiss the amended complaint on May 4, 2022 and moved to stay discovery pending the resolution of the motion to dismiss on May 11, 2022. (Doc. Nos. 39-40.) Timmons filed a brief opposing the motion to dismiss on June 13, 2022. (Doc. No. 48.) Defendants have not filed a reply brief and the deadline for doing so has expired under the Local

Rules. Accordingly, the motion to dismiss is ripe for disposition. The Court additionally granted the motion to stay discovery on May 11, 2022. (Doc. No. 40.)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

5

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III.    DISCUSSION

#### A.    Defendants' Motion to Dismiss

Defendants argue that dismissal is appropriate because the amended complaint is a "shotgun pleading" that violates Federal Rule of Civil Procedure 8 and because the amended complaint fails to state a claim upon which relief may be granted. (Doc. No. 41.)

The Court finds Defendants' shotgun pleading argument unavailing. A shotgun pleading is one that asserts a large number of claims against defendants without giving the defendants adequate notice of the grounds on which the claims rest. See Litwak v. Tomko, No. 3:16-cv-00446, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018). Dismissal of a complaint as a shotgun pleading is generally reserved for a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." See Dudley v. SCI Camp Hill, No. 1:20-cv-00523, 2020 WL 5893968, at *4 (M.D. Pa. Oct. 5, 2020). Here, the Court has no difficulty understanding the substance of Timmons's claims. The fact that

Timmons has raised a significant number of claims is not by itself sufficient to dismiss the amended complaint as a shotgun pleading.

Turning to the merits of the claims, the Court will first analyze Timmons's Eighth Amendment claims, all of which sound in deliberate indifference to the conditions of Timmons's confinement. To state a claim for deliberate indifference, a plaintiff must allege (1) that he was deprived of the "minimal civilized measures of life's necessities" and (2) that defendants were deliberately indifferent to the plaintiff's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The Court finds that Timmons's food tampering claim states an Eighth Amendment claim upon which relief may be granted. Although isolated incidents of food tampering do not amount to a violation of the Eighth Amendment, see, e.g., Robinson v. Danberg, 673 F. App'x 205, 213 (3d Cir. 2016) (unpublished); Rieco v. Moran, 633 F. App'x 76, 78 (3d Cir. 2015) (unpublished), plaintiffs may state a claim for violation of the Eighth Amendment if they allege that they ate the tampered food and suffered an injury as a result. See Rieco, 633 F. App'x at 78. Here, Timmons alleges (1) at least thirteen incidents of food tampering over a period of several months, (2) that he ate the adulterated food on at least three occasions, and (3) that eating the adulterated food caused him physical illness on one occasion. (Doc. No. 38 at 3-7.) The Court finds this alleged pattern of food tampering sufficient to state a claim for violation of the Eighth Amendment upon which relief may be granted.

Timmons's other Eighth Amendment claims fail to state a claim upon which relief may be granted. Timmons's deprivation of food claim appears to be duplicative of his food tampering claim. See (id. at 10 (alleging that Defendants' "actions of food tampering and contamination to deprive Plaintiff Timmons of food constituted cruel and unusual

punishment.")).  To the extent that the claim attempts to raise an independent claim that Timmons was denied meals, it fails to do so because there are no allegations in the amended complaint that any meals were withheld from Timmons.  The claim also fails when it is liberally construed as alleging that Timmons was functionally denied meals as a result of prison officials tampering with his meals, as the isolated denial of a small number of meals over a period of several months does not state an Eighth Amendment claim upon which relief may be granted.  See Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018) (alleged deprivation of three meals in three-month period did not state an Eighth Amendment claim upon which relief could be granted because only a substantial deprivation of food states an Eighth Amendment claim upon which relief may be granted).

As for Timmons's deliberate indifference and failure to protect claims, the only Defendant named with respect to those claims is Brittain, and the only factual allegations against Brittain arise from her responses to Timmons's grievances.  (Id. at 7, 10.)  Allegations that a defendant reviewed and denied a plaintiff's grievance is not sufficient to allege the defendant's personal involvement in the underlying civil rights claim.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).  Accordingly, the Court will dismiss these claims.

The Court next considers Timmons's retaliation claim.  To state a retaliation claim upon which relief may be granted, a plaintiff must allege that (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against the plaintiff that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the plaintiff's protected conduct and the defendant's retaliatory action.  See Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019).  Here, Timmons alleges that he filed grievances and complaints against several correctional

officers, that Defendants tampered with his food for several months after these grievances and complaints were filed, and that the Defendants made several comments indicating that they were tampering with Timmons's food because of the grievances and complaints. The Court finds these allegations sufficient to state a retaliation claim upon which relief may be granted.

The Court also finds that Timmons's amended complaint states a conspiracy claim upon which relief may be granted. To state a claim for conspiracy to violate civil rights, a plaintiff must allege that (1) two or more persons reached an agreement to deprive the plaintiff of his constitutional rights; (2) one or more of the conspirators performed an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff or deprived him of his constitutional rights. See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (citing Barnes Foundation v. Twp. of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001)). In this case, Timmons's amended complaint makes no specific allegation of an agreement between Defendants, but the factual allegations of a prolonged series of food tampering events by Defendants provide a basis to infer an agreement between the Defendants at this stage of litigation. Timmons also pleads overt acts in the form of food tampering, and that he suffered an injury as a result of the food tampering. Accordingly, the Court will allow Timmons's conspiracy claim to proceed.

Timmons's remaining claims for intentional infliction of emotional distress, supervisory liability, and "campaign harassment" fail to state a claim upon which relief may be granted. To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege that (1) defendants engaged in extreme and outrageous conduct; (2) the conduct was intentional or reckless; (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. See Snider v. Pa. DOC, 505 F. Supp. 3d 360, 445 (M.D. Pa.

2020); Jordan v. PSU, 276 A.3d 751, 775 (Pa. Super. 2022).  Timmons fails to allege any emotional distress that he suffered as a result of Defendants' conduct and accordingly fails to state an intentional infliction of emotional distress claim upon which relief may be granted.

To state a claim for supervisory liability under § 1983, a plaintiff must allege that the supervisor personally directed the underlying civil rights violations or had actual knowledge of the violations and acquiesced in them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  The defendant's personal involvement cannot be based solely on a theory of respondeat superior.  See id.  Here, Timmons asserts a supervisory liability claim against Defendants Brittain, Applegate, Scarpati, and Kalse, but he fails to allege that they personally directed or acquiesced in the underlying civil rights violations.  The only allegation of knowledge and acquiescence arises from Defendant Brittain's review and denial of Timmons's grievances, which is not a sufficient basis to allege personal involvement.  See Dooley, 957 F.3d at 374.

Finally, it is somewhat unclear to the Court what claim Timmons intends to plead with his "campaign harassment" claim, but based on the case law cited in his brief, it appears that the campaign harassment claim is an Eighth Amendment deliberate indifference claim by another name.  See Calhoun v. Hargrove, 312 F.3d 730, 734-35 (5th Cir. 2002) (noting that prisoner plaintiff stated Eighth Amendment deliberate indifference claim against defendant based on alleged campaign of harassment by defendant), cited in (Doc. 48 at 13).[2]  For the reasons previously stated, the amended complaint fails to state an Eighth Amendment claim with the exception of Timmons's food tampering claim.  The "campaign harassment" claim also fails to state a claim to the extent that it seeks relief on the basis of verbal harassment, because harassing

---

[2] The other case cited in Plaintiff's brief, Witte v. Wisconsin Dep't of Corrs., 434 F.3d 1031 (7th Cir. 2006), is an employment discrimination case that is not relevant to the instant case.

and threatening language by itself does not violate the Eighth Amendment. See, e.g., Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (unpublished); Rieco, 633 F. App'x at 79.

**B.      Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id.

Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to permit Timmons to file a second amended complaint that corrects the deficiencies identified herein. Timmons is advised that the second amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the first two complaints or any other document already filed. The second amended complaint should set forth Timmons's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that Timmons claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim. If Timmons does not file a second amended complaint, the first amended complaint will

remain the operative pleading and the case will proceed as to Timmons's food tampering, retaliation, and conspiracy claims only.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss and grant Plaintiff leave to file a second amended complaint. An appropriate Order follows.