## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-00798** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **K. BRITTAIN, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

This is a prisoner civil rights case in which pro se Plaintiff Brandon Timmons ("Timmons") alleges that Defendants violated his civil rights by tampering with his food for several months beginning in late 2020.  Presently before the Court is Defendants' motion for summary judgment and Timmons's motion to suppress certain exhibits from the summary judgment record.  (Doc. Nos. 84, 91.)  For the following reasons, the Court will grant the motion for summary judgment, deny the motion to suppress, and close this case.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Timmons is currently incarcerated in Mahanoy State Correctional Institution ("SCI-Mahanoy") but was incarcerated in Frackville State Correctional Institution ("SCI-Frackville") at all relevant times.  He initiated this case through the filing of a civil rights complaint pursuant to 42 U.S.C. § 1983 on May 3, 2021.  (Doc. No. 1.)  The case is proceeding on Timmons's amended complaint, which he filed on April 20, 2022.  (Doc. No. 38.)  The amended complaint alleges generally that Defendants, various officials of SCI-Frackville, violated Timmons's rights by repeatedly tampering with his food between December 2020 and June 2021.  (<u>Id.</u>)

On November 28, 2022, the Court granted in part and denied in part Defendants' motion to dismiss the amended complaint, allowing the case to proceed as to Timmons's food tampering, retaliation, and conspiracy claims, but dismissing all other claims without prejudice to Timmons's right to reassert the claims in a second amended complaint.  (Doc. Nos. 51–52.) Timmons did not file a second amended complaint, so the case proceeded solely as to the food tampering, retaliation, and conspiracy claims.  Defendants then answered the amended complaint on January 11, 2023.  (Doc. No. 58.)

Following the close of fact discovery on December 31, 2023, <u>see</u> (Doc. No. 79 at 3), Defendants filed the instant motion for summary judgment along with a statement of material facts and a supporting brief on February 29, 2024.  (Doc. Nos. 84–86.)  Timmons opposed the motion and filed a response to Defendants' statement of material facts on April 23, 2024.  (Doc. Nos. 91–92.)  Timmons then filed the instant motion to suppress on April 29, 2024, along with a brief in support of the motion.  (Doc. Nos. 91–92.)  Defendants have not filed a brief in opposition to the motion to suppress or a reply brief in support of their motion for summary judgment, and the deadlines for both briefs have expired under the Local Rules.  Because briefing on the motion for summary judgment and motion to suppress has now concluded, both motions are ripe for judicial review.

## II.    MATERIAL FACTS[1]

Under the Pennsylvania Department of Corrections' grievance policy, DC-ADM 804, a prisoner seeking to exhaust administrative remedies for a complaint regarding his prison conditions must first submit a written grievance within fifteen (15) working days from the date of the incident.  See (DC-ADM 804 § 1(A)(8), (Doc. No. 85-7 at 6)).  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."  See (id. § 1(A)(11), (Doc. No. 85-7 at 6)).  "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."  (Id. § 1(A)(11)(d), (Doc. No. 85-7 at 6)).  Next, the prisoner must submit a written appeal to an intermediate review level within fifteen (15) working days.  See (id. § 2(A)(1)(a), (Doc. No. 85-7 at 16)).  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days.  See (id. § 2(B)(1)(b), (Doc. No. No. 85-7 at 19)).

Between December 2020 and the beginning of June 2021, Timmons filed thirty-two grievances.  See (Doc. No. 85 ¶ 4; Doc. No. 90 ¶ 4).[2]  Four of those grievances—grievance numbers 903323, 913041, 925882, and 927977—are potentially relevant to this case.  (Doc. No.

---

[1]  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts and Timmons's response to the statement.  (Doc. Nos. 85, 90.)

[2]  Timmons asserts that he filed "over 50 grievances" during this period, see (Doc. No. 90 ¶ 4), but he has not produced any evidence that refutes Defendants' contention that he filed only thirty-two (32) grievances during the relevant period.  The Court accordingly deems this fact undisputed.

85 ¶ 5; Doc. No. 90 ¶ 5.)  Timmons asserts that he attempted to file a fifth grievance that was

relevant to this case on March 31, 2023.  See (Doc. No. 90 ¶ 5; Doc. No. 89-2 at 15).

Timmons filed grievance number 903323 on December 6, 2020.  (Doc. No. 85 ¶ 6; Doc.

No. 90 ¶ 6.)[3]  In the grievance, Timmons stated the following:

> I am writing this grievance because on 12-4-20 officer L. Burgess gave me
> condiment packets with my meal that looked to be resealed and contaminated.
> [A]fter eating one I became sick. This is an officer I have a pending suit and A-D-
> A on.  It is also to be noted that many of my meals looked to be tampered with the
> last 2 weeks.  I have active allegation of abuses in and I have not been interviewed
> by anyone.  I ask to be compensated for damages[.]

(Doc. No. 89-2 at 10.)  Timmons did not make any specific claim regarding retaliation or

conspiracy within the grievance.  (Doc. No. 85 ¶ 8; Doc. No. 89 ¶ 8; Doc. No. 89-2 at 10.)[4]  The

grievance was denied at the initial level, and Timmons then appealed to the facility manager.

See (Doc. No. 89-2 at 8).  The facility manager denied the appeal on February 8, 2021.  (Id.)

Timmons filed an appeal to SOIGA on March 22, 2021.  (Id. at 7.)  Timmons asserted a

retaliation claim for the first time in the appeal to SOIGA.  See (id.).  SOIGA denied the appeal

on its merits on May 13, 2021.  (Id. at 6.)

---

[3]  Timmons's motion to suppress challenges the authenticity of the copy of grievance number
903323 that Defendants have produced with their motion, but he has also filed a copy of the
grievance as an exhibit to his statement of material facts.  See (Doc. No. 89-2 at 10).  The copies
of the grievance appear to be identical, except for the fact that Timmons's produced copy is a
lower quality photocopy.  See (Doc. No. 85-2 at 2; Doc. No. 89-2 at 10).  Nevertheless, the Court
will cite the copy of the grievance that Timmons has produced in light of his challenge to the
authenticity of the other copy.

[4] Timmons disputes this contention, but the plain text of the grievance refutes his account.  See
(Doc. No. 89-2 at 10).

Timmons filed grievance number 913041 on January 24, 2021.  (Doc. No. 85 ¶ 9; Doc. No. 90 ¶ 9.)[5]  In the grievance, Timmons stated the following:

> I am writing this grievance today is 1-24-21.  My food and condiment packets continue to be tamper[e]d with by various officers[.]  I ask that this be stopped. This is a continual pattern.  I can hardly eat because of this.

(Doc. No. 89-2 at 5.)  Timmons did not make any claim regarding retaliation or conspiracy in the grievance.  (Doc. No. 85 ¶ 11; Doc. No. 90 ¶ 11; Doc. No. 89-2 at 5.)[6]  Timmons did not request monetary relief in the grievance.  (Doc. No. 85 ¶ 12; Doc. No. 90 ¶ 12; Doc. No. 89-2 at 5.)[7]  SCI-Frackville's grievance coordinator denied the grievance on February 22, 2021.  (Doc. No. 89-2 at 4.)  Timmons appealed the denial to the facility manager on February 27, 2021, at which point he requested damages.  (Id. at 3.)  The facility manager affirmed the denial on March 1, 2021.  (Id. at 2.)  Timmons appealed to SOIGA, which affirmed the denial of the grievance and the denial of all "requested relief" on May 4, 2021.  (Id. at 1.)

Timmons filed grievance number 925882 on April 27, 2021.  (Doc. No. 85 ¶ 13; Doc. No. ¶ 13.)[8]  In the grievance, Timmons stated:

---

[5]  Timmons's motion to suppress again challenges the authenticity of the copy of this grievance that Defendants have produced with their motion, but he has also filed a copy of the grievance. See (Doc. No. 89-2 at 5).  The copies appear to be identical except for stray pencil marks on Timmons's copy and a stamp indicating that the copy was received by SOIGA.  See (Doc. No. 85-3 at 2; 89-2 at 5).  The Court will cite Timmons's copy in light of his challenge to the authenticity of the other copy.

[6]  Timmons disputes this contention, but the plain text of the grievance refutes his account.  See (Doc. No. 89-2 at 5).

[7]  Timmons disputes this contention, but the plain text of the grievance refutes his account.  See (id.)

[8]  Timmons's motion to suppress again challenges the authenticity of the copy of this grievance that Defendants have produced with their motion, but he has also filed a copy of the grievance. See (Doc. No. 89-2 at 11).  The copies appear to be identical.  See (Doc. No. 85-4 at 2; 89-2 at 11).

> On 4-12-21 in my meal bag I received 2 taco sauce packets that looked to have been tamper[e]d with from CO-1 Walton on E-Block.  Food tampering has been going on continually for months by various officers[.]  I ask that all food tampering and retaliation be stopped and I be compensated.  This is cruel and unusual punishment.

(Doc. No. 89-2 at 11.)  Timmons did not make any conspiracy claims in this grievance.  (Doc. No. 85 ¶ 17; Doc. No. 90 ¶ 17; Doc. No. 89-2 at 11.)[9]  Timmons did not appeal grievance number 925882 through final appeal by SOIGA.  (Doc. No. 85 ¶ 18; Doc. No. 90 ¶ 18.)  Timmons asserts that his failure to appeal to SOIGA was because officials at SCI-Frackville did not respond to his appeal to the facility manager.  (Doc. No. 90 ¶ 18.)  He attaches the appeal that he purportedly attempted to file, in which he states, "I appeal CO-1 Walton and other officers have continued to tamper with my food I ask to be compensated.  This has been going on for months continuously."  (Doc. No. 89-2 at 13.)

Timmons filed grievance number 927977 on May 16, 2021.  (Doc. No. 85 ¶ 19; Doc. No. 90 ¶ 19.)  In the grievance, Timmons alleges that he "was burned for [his] milks" on May 10, 2021 and May 11, 2021 in retaliation by an unknown officer.  (Doc. No. 85 ¶ 20; Doc. No. 90 ¶ 20.)[10]  The amended complaint does not contain any factual allegations about May 10, 2021, or May 11, 2021.  (Doc. No. 85 ¶ 21; Doc. No. 90 ¶ 21.)[11]

___

The Court will cite Timmons's copy in light of his challenge to the authenticity of the other copy.

[9]  Timmons disputes this contention, but the plain text of the grievance refutes his account.  <u>See</u> (Doc. No. 89-2 at 11).

[10]  Timmons's motion to suppress again challenges the authenticity of the copy of the grievance that defendants have produced.  Although Timmons has not filed a separate copy of this grievance, the parties' statements of material facts agree on the relevant text of the grievance.  <u>See</u> (Doc. No. 85 ¶ 20; Doc. No. 90 ¶ 20).  The Court will accordingly cite to the statements of material facts rather than citing the grievance directly.

[11]  Timmons disputes this contention, but the plaint text of the amended complaint refutes his account.  <u>See</u> (Doc. No. 38).

In the additional grievance that Timmons purportedly attempted to file on March 31, 2021, he stated the following:

> This grievance is about food tampering.  I am writing this grievance because from 3-14-21 to 3-23-21 on E-Block CO-1 Morris[,] CO-2 Scarpati[, and] CO-1 Walton gave me tamper[e]d with food and food items[,] condiment packets that were opened resealed and contaminated[,] and also Morris gave me soaked bread in contaminated water[.]  I ask that all food tampering stop and I be compensated. This is retaliatory acts.

(Doc. No. 89-2 at 15.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A disputed fact is "material" if proof of its existence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his

or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## IV.  DISCUSSION

Defendants assert eight arguments in support of their motion for summary judgment, as follows: (1) Defendants Brittain and Stahler were not personally involved in Timmons's remaining claims; (2) Timmons failed to exhaust administrative remedies; (3) Timmons cannot establish the elements of his food tampering claims; (4) Timmons cannot establish the elements of his retaliation claims; (5) Timmons cannot establish the elements of his conspiracy claims; (6) Timmons is not entitled to compensatory damages; (7) Timmons is not entitled to punitive damages; and (8) Timmons's requests for equitable relief are moot.  (Doc. No. 86.)  The Court will first address Timmons's motion to suppress before turning its attention to Defendants' arguments.

### A.  Motion to Suppress

As a preliminary matter, the Court will consider Timmons's motion to suppress, which seeks to suppress from the summary judgment record "exhibits of grievances, grievance history, cell assignment policy[,] DC-ADM 804" that Defendants filed in connection with their motion for summary judgment because the documents "were not attached with a[n] affidavit of authentication."  (Doc. No. 91 at 1.)

9

The Court will deny the motion to suppress as moot.  Having reviewed the record of this case and the parties' summary judgment submissions, the Court finds that, with the exception of the text of DC-ADM 804, the motion for summary judgment can be resolved entirely based on the exhibits attached to Timmons's motion.  Accordingly, there is no need to resolve Timmons's authenticity argument with respect to the grievances, grievance history, or cell assignment exhibits.

As for DC-ADM 804, Timmons is correct that Defendants have not attached any declarations attesting to the authenticity of the copy of the policy that they attach to their motion, but it appears to the Court that the copy is identical in all relevant respects to the copy of the policy that is available on the Pennsylvania Department of Corrections' website.  See DC-ADM 804, available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (last visited Sept. 16, 2024).[12]  Because the policy is publicly available on a government website, the Court could take judicial notice of it regardless of Timmons's authenticity challenge.  See Vanderklok v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017).  There is accordingly no need for the Court to resolve the authenticity challenge because the information would be properly considered on summary judgment regardless of the outcome of the analysis.  The motion to suppress will therefore be denied as moot and the Court will turn to Defendants' summary judgment arguments, first addressing Defendants' argument as to the affirmative defense of failure to exhaust administrative remedies before addressing Defendants' merits-based arguments.

---

[12]  The current version of DC-ADM 804 has been in effect since May 1, 2015, and was therefore in effect at all times relevant to this case.  See (id.).

**B.      Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court.  See 42 U.S.C. § 1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020).  The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison.  See id. at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  The failure to exhaust available administrative remedies is an affirmative defense.  See Jones v. Bock, 549 U.S. 199, 216 (2007).  Accordingly, "the burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).

A prisoner is only required to exhaust administrative remedies that are "available."  See id. at 266 (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  See id. at 266–67 (quoting Ross v. Blake, 578 U.S. 632, 643–44 (2016)).

Defendants argue that Timmons failed to exhaust administrative remedies as to all claims advanced in his amended complaint except: (1) the December 4, 2020 food tampering claim against Defendant Burgess; and (2) the January 24, 2021 food tampering claim against

Defendant Warford.  (Doc. No. 86 at 9.)  Because the exhaustion argument proceeds in several steps, the Court will analyze each step seriatim.

### 1.      Grievance Number 903323

Defendants first argue that Timmons failed to exhaust any claims for retaliation and conspiracy arising from the allegation of food tampering by Burgess on December 4, 2020, because he failed to assert any retaliation or conspiracy claims in grievance number 903323. (Doc. No. 86 at 10.)  Timmons argues that he did not have to specifically state that he was advancing retaliation and conspiracy claims in his grievance because the substance of the grievance encompassed these claims.  (Doc. No. 89 at 5.)  Timmons also asserts that he did not know he needed to include specific claims because he was denied a copy of DC-ADM 804 during his incarceration at SCI-Frackville.  (Id.)

The Court agrees with Defendants that Timmons failed to exhaust his conspiracy claim arising from the alleged food tampering incident on December 4, 2020.  Although Timmons is correct that he would not need to specifically assert a retaliation claim or a conspiracy claim in his grievance if the claims were fairly encompassed by the substance of his grievance, nothing in grievance number 903323 indicates that Timmons was complaining about a conspiracy.  In the grievance, Timmons complains only about food tampering by Burgess on December 4, 2020; there is no allegation that Burgess was acting in concert with any other individuals or that he had an agreement with any other individuals.  See (Doc. No. 89-2 at 10).  The Court accordingly will grant summary judgment on the conspiracy claim arising from the December 4, 2020, incident for failure to exhaust administrative remedies.[13]

---

[13] Timmons's unavailability argument does not alter this conclusion.  He asserts that he was not provided a copy of DC-ADM 804 during the relevant period and that he therefore did not know that he needed to specifically state the legal claims he wished to assert, (Doc. No. 89 at 5), but as

The Court will deny Defendants' motion on exhaustion grounds, however, with respect to the retaliation claim arising from the December 4, 2020, incident.  Although Defendants are correct that Timmons did not advance a retaliation claim in his original grievance at grievance number 903323, (Doc. No. 89-2 at 10), Timmons subsequently asserted a retaliation claim in his appeal to SOIGA, and SOIGA then considered the retaliation claim on its merits and denied it, (Doc. No. 89-2 at 6–10).  SOIGA's denial of the retaliation claim on the merits constitutes exhaustion of administrative remedies.  See Rinaldi, 904 F.3d at 271 ("[W]here a prison disregards its own procedures and rejects an inmate's otherwise procedurally defaulted complaint on the merits, the claim is 'properly exhausted' under the PLRA.").

### 2.    Grievance Number 913041

Defendants argue that Timmons failed to exhaust any retaliation or conspiracy claims, any claims for monetary relief, or any claims against defendants other than Defendant Warford in grievance number 913041.  (Doc. No. 86 at 11.)  Timmons argues that he identified other Defendants by functional description of their roles in the grievance and that he exhausted his claims in the grievance.  (Doc. No. 89 at 3–4.)

The Court finds that Timmons did not exhaust administrative remedies with respect to any of his claims in grievance number 913041 because the grievance does not provide sufficient factual detail to comply with DC-ADM 804.  Under DC-ADM 804, a grievance must include a statement of facts that includes, inter alia, "the date, approximate time and location of the event(s) that gave rise to the grievance," and a statement of the individuals who were involved in the actions.  (DC-ADM § 1.A.11, Doc. No. 85-7 at 5.)  In grievance number 913041, Timmons

_____

the Court noted above, he did not need to specifically state the legal claims he wished to assert so long as the claims were fairly encompassed by the substance of the grievance.

vaguely stated, "My food and condiment packets continue to be tamper[e]d with by various officers[.]  I ask that this be stopped.  This is a continual pattern.  I can hardly eat because of this."  (Doc. No. 89-2 at 5.)  These extremely vague allusions to unspecified tampering by unspecified officers on unspecified dates for an unspecified amount of time are simply inadequate to give prison officials notice of the relevant facts.  The Court will accordingly grant summary judgment for failure to exhaust administrative remedies as to any claims connected to grievance number 913041.

### 3.      Grievance Numbers 925882 and 927977

Defendants argue that grievance numbers 925882 and 927977 are irrelevant to this case and therefore cannot act to exhaust Timmons's claims because the grievances pertained only to alleged incidents of food tampering on April 12, 2021, May 10, 2021, and May 11, 2021, and Timmons does not assert any incidents of food tampering on those dates in his operative complaint.  (Doc. No. 86 at 11–13.)

The Court agrees.  There are no allegations in the amended complaint of any food tampering—or any other events—on April 12, 2021, May 10, 2021, and May 11, 2021.  See generally (Doc. No. 38).  Thus, because grievance numbers 925882 and 927977 only allege food tampering on those dates, they are irrelevant to the question of whether Timmons exhausted administrative remedies.[14]

---

[14] Although grievance number 925882 additionally states that "[f]ood tampering has been going on continually for months by various officers," see (Doc. No. 89-2 at 11), this vague and general allegation is not sufficient to satisfy DC-ADM 804's requirement of a statement of facts that provides the date, events, and who was involved.  See (DC-ADM § 1.A.11, Doc. No. 85-7 at 5).

### 4.      Timmons's Purported Attempt to File an Additional Grievance

Finally, the Court considers whether Timmons's assertion that a fifth grievance he purportedly attempted to file on March 31, 2021, is relevant to the exhaustion analysis. Timmons asserts in the declaration attached to his summary judgment brief that the grievance was "never processed and filed" after Timmons placed it in the "grievance box." (Doc. No. 89-1 at 5.) Timmons asserts that he wrote letters to the facility manager and facility grievance coordinator on unspecified dates inquiring why the grievance was never processed. (Id.) He has not attached copies of these letters or any other evidence that they were sent.[15]

The court finds that Timmons has not shown that there is a genuine issue of material fact with respect to this grievance. "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (quoting Kirleis v. Dickie, McCarney & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)). Here, Timmons asserts that he filed a grievance on March 31, 2021, but he has not produced any evidence to establish that this was the case other than his own conclusory, self-serving declaration and a copy of the grievance itself, which does not contain any indicia that it was filed. The Court accordingly finds that the grievance he purportedly sent on March 31, 2021 is not sufficient to show that he exhausted administrative remedies.

---

[15]  Timmons's declaration cites to Exhibit 14 in connection with his argument regarding this grievance, but no Exhibit 14 is attached to his summary judgment filings. See (Doc. No. 89-2 15–16). The Court has additionally reviewed the original paper copies submitted by Timmons and confirmed that they did not include any document labeled Exhibit 14.

5.      **Purported Threats by Najda, Brennan, and Whitney**

Because Defendants have established that Timmons failed to exhaust administrative remedies as to all claims other than his food tampering and retaliation claims against Defendant Burgess, the burden shifts to Timmons to show that the grievance process was unavailable to him.  See Rinaldi, 904 F.3d at 268.  Timmons asserts that threats by Defendants Najda, Brennan, and Whitney rendered the grievance process unavailable with respect to his claim against those Defendants.[16]  (Doc. No. 89 at 7.)  Although Timmons is correct that threats by prison officials could render a grievance process unavailable, see Rinaldi, 904 F.3d at 266–67 (quoting Ross, 578 U.S. at 643–44), the Court will defer consideration of this unavailability argument because the claims against Najda, Brennan, and Whitney fail on their merits, as discussed infra.[17]

---

[16]  The Court previously addressed, and found unpersuasive, Timmons's other unavailability argument that the grievance process was unavailable to him because he was not provided with a copy of DC-ADM 804.  See (supra note 13).

[17]  Although exhaustion of administrative remedies is ordinarily resolved before the merits of a plaintiff's claims, see, e.g., Small v. Camden County, 728 F.3d 265, 271 n.5 (3d Cir. 2013), exhaustion of administrative remedies under the PLRA is "non-jurisdictional" in nature.  See Rinaldi, 904 F.3d at 265.  Nonjurisdictional rules do not limit courts' "adjudicatory authority"; rather they "govern how courts and litigants operate within those bounds."  See Santos-Zacaria v. Garland, 598 U.S. 411, 416 (2023) (citing Kontrick v. Ryan, 540 U.S. 443, 455 (2004)).  Thus, courts may proceed to the merits without deciding whether a plaintiff has satisfied a nonjurisdictional exhaustion rule.  See id. (indicating that because exhaustion rules are typically nonjurisdictional in nature, litigants are not required to "slog through preliminary nonjudicial proceedings even when . . . a court finds it would be pointless, wasteful, or too slow" as they would be if exhaustion rules were treated as jurisdictional); Jaludi v. Citigroup & Co., 57 F.4th 148, 151 (3d Cir. 2023) ("To be sure, violations of a nonjurisdictional procedural requirement often end in dismissal.  But because they do not deprive us of jurisdiction, we can sometimes overlook or excuse them." (internal citations omitted)).  Here, the Court has determined that resolving the merits of the claims against Najda, Brennan, and Whitney without deciding whether they threatened Timmons in such a way as to make the grievance process unavailable advances the interest of judicial economy.

### C.   Merits

Turning to the merits of Plaintiff's remaining claims, the Court will first consider Timmons's remaining food tampering and retaliation claims against Defendant Burgess.  The gravamen of Timmons's food tampering claim against Burgess is that Burgess was deliberately indifferent to the conditions of Timmons's confinement.  A plaintiff advancing an Eighth Amendment conditions of confinement claim must prove that: (1) he suffered a "sufficiently serious" deprivation; and (2) the prison official defendant had a sufficiently culpable state of mind.  See Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2022) (quoting Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020)).  The first element is an objective standard requiring allegations that the plaintiff was denied "the minimal civilized measures of life's necessities."  See id. (quoting Wilson v. Seiter, 501 U.S. 294, 299 (1991)).  It is not enough to allege that the plaintiff was uncomfortable.  See id.  Rather, the plaintiff must allege that the conditions of his confinement posed a "substantial risk of serious harm" to his health or safety.  See id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The second element is subjective and requires allegations that the defendant was deliberately indifferent to a substantial risk of serious harm to the plaintiff's health or safety.  See id. (citing Farmer, 511 U.S. at 834).  This requires allegations that the defendant was aware of the risk and disregarded it.  See id. (citing Beers-Capitol v. Wetzel, 256 F.3d 120, 133 (3d Cir. 2001)).

Defendants argue that Burgess is entitled to summary judgment on the food tampering claim because (1) Timmons does not have any evidence that Burgess tampered with his food and (2) Timmons does not have any evidence that he suffered an actual injury caused by Burgess's actions.  (Doc. No. 86 at 16.)  Timmons argues in response that "[t]his Court has already established that the Defendants violated [his] Eighth Amendment rights" by concluding that

17

Timmons's amended complaint states an Eighth Amendment claim upon which relief may be granted.  (Id. at 8.)  Timmons further argues that he has produced sufficient evidence to establish an Eighth Amendment violation because he has shown that he became sick shortly after eating the food with which Burgess allegedly tampered.  (Id.)

To counter Defendants' contention that he does not have any evidence to support his claims, Timmons has produced a declaration from himself in which he states that Burgess gave him a fish sandwich with a tartar sauce packet on December 4, 2020, that Timmons consumed the sandwich, and that he immediately suffered from nausea, headaches, and diarrhea afterwards.  (Doc. No. 89-1 at 2.)  Timmons states that he examined the tartar sauce packet and that it had been "resealed" and "smelled of a chemical and foreign substance."  (Id.)  Timmons also states that Burgess spoke with him hours later and admitted that he had tampered with the tartar sauce.  (Id.)  Timmons has also produced a sick call request that he sent to the prison's medical department shortly after the incident, wherein he stated, "I was given condiment packets that were tamper[e]d with by CO#1 Burgess and contaminated purposely[.]  I have a headache[,] diarrhea, and nausea.  I have been throwing up.  I need to be seen."  (Doc. No. 89-2 at 21.)

The Court agrees with Defendants that Timmons has not produced sufficient evidence to survive summary judgment on his Eighth Amendment food tampering claim against Burgess.  As the Court noted above, "conclusory, self-serving affidavits" are generally "insufficient to withstand a motion for summary judgment."  Gonzalez, 678 F.3d at 263 (quoting Kirleis, 560 F.3d at 161).  Timmons's food tampering claim is based on Burgess purportedly opening a tartar sauce packet, adding a foreign substance to it, and then surreptitiously resealing the packet before delivering it to Timmons, but the only evidence Timmons has produced to show that Burgess actually did these things is a self-serving affidavit in which Timmons attests that

Burgess essentially told him he did.  Absent additional evidence such as test results showing that the tartar sauce actually contained a foreign substance or a statement from an expert stating that Timmons's physical symptoms were caused by a foreign substance, Timmons's self-serving and conclusory declaration is not sufficient to withstand Defendants' motion for summary judgment.[18]

Moreover, even if these facts were proven at trial, they would not amount to a violation of the Eighth Amendment.  A single isolated incident of food tampering resulting in only temporary mild injuries does not violate the Eighth Amendment.  See Robinson v. Danberg, 673 F. App'x 205, 213 (3d Cir. 2016) (unpublished); Ali v. Suchocki, 254 F. App'x 143, 145 (3d Cir. 2007) (unpublished).  Accordingly, the Court will grant Burgess summary judgment on the food tampering claim.

The retaliation claim against Burgess fails for essentially the same reasons.  The retaliation claim requires proof that: (1) Timmons engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection

---

[18]  Timmons's argument that "[t]his Court has already established that the Defendants violated [his] Eighth Amendment rights" by concluding that Timmons's amended complaint states an Eighth Amendment claim upon which relief may be granted is unavailing.  (Doc. No. 86 at 8.) The Court's previous ruling found that the amended complaint stated an Eighth Amendment claim upon which relief may be granted; it did not state that such a claim would withstand a motion for summary judgment.  Sufficient allegations of wrongdoing in a complaint are all that is required to survive a motion to dismiss, but more is required for a plaintiff's case to proceed past the summary judgment stage.  See, e.g., GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 199 (3d Cir. 2001) (noting that a plaintiff opposing a motion for summary judgment "'cannot rest simply on the allegations in the pleadings,' but 'must rely on affidavits, depositions, answers to interrogatories, or admissions on file.'" (quoting Bhatla v. U.S. Capital Corp., 990 F.2d 780, 787 (3d Cir. 1993)).  Accordingly, the Court's previous ruling that the amended complaint states an Eighth Amendment claim does not preclude Defendants from obtaining summary judgment on the claim.

between the protected conduct and the retaliatory action.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Here, the only evidence that Burgess took the retaliatory action of tampering with Timmons's tartar sauce packet is Timmons's conclusory and self-serving affidavit that Burgess supposedly told him he did.  This evidence is not sufficient for the retaliation claim to survive summary judgment.

Finally, the claims against Defendants Najda, Brennan, and Whitney also fail on their merits for Timmons's lack of evidence.[19]  Like his claims against Burgess, the only evidence Timmons has advanced to prove that these Defendants tampered with his food is his own self-serving declaration stating that the Defendants supposedly told him they did.  See (Doc. No. 89-1 at 3 ("On 3-3-21[,] Defendant Najda gave me a food tray at lunch on E-Block[.]  This had 2 ketchup packets that had been opened[,] resealed and contaminated[,] and he told me a foreign substance had been placed in my food of salt-peter . . . ."); id. ("Then on 3-7-21[,] Defendant Brennan gave me 2 ketchup packets that been contaminated and tamper[e]d with.  Defendant Brennan made a statement to Plaintiff that he better not eat and if he put a grievance on his name about this Plaintiff would be hung in his cell"); id. at 4 ("On 4-1-21[,] Defendant Whitney gave me ketchup packets with my food tray that had been tamper[e]d with by way of opening and resealing[,] telling me that he had placed urine in my food.")).  And unlike the claims against Burgess, Timmons's claims against Najda, Brennan, and Whitney suffer from the additional weakness that Timmons apparently did not eat the contaminated food after they gave it to him. In fact, it appears from the evidence that the Defendants specifically told him that they tampered

---

[19]  As noted supra, the Court deferred consideration of whether these Defendants threatened Timmons in such a way as to make the grievance process unavailable because the Court concluded that proceeding to the merits rather than resolving these questions advanced the interest of judicial economy.  See (supra note 17).

with his food so that he would <u>not</u> eat the food.  Thus, given the absence of evidence that Defendants Najda, Brennan, or Whitney tampered with Timmons's food in a way that could be considered deliberate indifference in violation of the Eighth Amendment or that they committed retaliatory acts against Timmons in violation of the First Amendment, the Court will grant summary judgment to these Defendants.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment, deny Timmons's motion to suppress, and close this case.  An appropriate Order follows.

<u>s/ Yvette Kane           </u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania